**In re HEALTH GOURMET, INC., Debtor.**

**CONSUMERS CREDIT UNION, Plaintiff,**

**v.**

**Irving WIDETT, Trustee of Health Gourmet, Inc., Defendant.**

**Bankruptcy No. 79–1992–JG. Adv. No. A80–0055.**

United States Bankruptcy Court, D. Massachusetts.

May 5, 1983.

Alan Garber, David Strauss, Boston, Mass., for plaintiff.

Steven Shulman, Boston, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

Before the Court is the Motion for Summary Judgment of the Plaintiff, Consumers Credit Union, ("Consumers" or "the Bank") on its Complaint to determine secured status with respect to the property of the debtor, Health Gourmet, Inc. ("Health Gourmet" or "the debtor"). The trustee opposes summary judgment and seeks to avoid the security interest as a fraudulent conveyance under bankruptcy and state law. Subsequent to the filing of the complaint and upon agreement of the parties, the court ordered a sale of the debtor's assets with valid liens to attach to the proceeds of the sale. The issue is whether the credit union has a valid lien which should attach to the proceeds of the sale.

The affidavits and depositions on file disclose the following undisputed facts. From September of 1978 until the filing of an involuntary bankruptcy petition on October 29, 1979, Health Gourmet, Inc. operated a restaurant at 175 Massachusetts Avenue, Boston, Massachusetts. Jerome Rubin ("Rubin") was the sole officer and director. He also owned fifty per cent of the stock. The other fifty per cent of the stock was held by a Mr. Gilbert Golden. In June 1979, the debtor required additional capital to meet its expenses, and Rubin believed that Gilbert Golden would loan funds to the debtor to meet its expenses. Thereafter Rubin engaged in the following series of check-writing transactions.

Rubin wrote checks to Health Gourmet from his personal checking account at the Consumers Credit Union totalling $9,500 dated June 6, June 14, and June 19, 1979, in the amount of $2,500, $3,500 and $3,500 respectively. In order to cover the amounts of these checks, Rubin wrote three other checks to himself totalling $9,500 on the checking account of Emporium Publications S.A., Inc., a corporation which he owned. The Emporium Publications' checks were dated: June 8, June 15, and June 20, 1979 in the amounts of $2,500.00, $3,500.00 and $3,500.00 respectively. Rubin deposited the Emporium Publications checks into his personal Consumers Credit Union account. The deposit of the Emporium Publications' checks in Rubin's Consumers Credit Union account made it appear that there were sufficient funds to cover Rubin's checks to the debtor. As a result, the Consumers Credit Union paid each of Rubin's three checks to the debtor when they were presented for payment through the commercial bank collection process. Ultimately there were insufficient funds in the Emporium Publications account to cover the $9,500 in checks written on it, and as a result, the Emporium Publications checks bounced. The Consumers Credit Union had paid Rubin's personal checks to the debtor on what turned out to be overdrawn funds from Rubin's account.

When the Consumers' Credit Union discovered the $9,500 in overdrafts, Elliott H.

Stone, Treasurer of Consumers Credit Union, called Rubin and demanded payment of the $9,500. Rubin explained to Mr. Stone that he had incurred the overdrafts on behalf of Health Gourmet, Inc. while attempting to meet its expenses. Rubin stated that although the debtor did not have the money to pay back the Credit Union at the time, he wanted to repay Consumers Credit Union out of future operating expenses from Health Gourmet. Mr. Stone arranged for the Consumer Credit Union to make a loan to Health Gourmet of $9,500 to eliminate the overdraft in Rubin's account. Exhibit 4 to Rubin's deposition indicates that on July 6, 1979, Consumers Credit Union issued a check for the sum of $9,500 payable to "Jerome Rubin or Consumers Credit Union". The $9,500 check was deposited in Consumers Credit Union's account at the Shawmut Bank of Boston, N.A. On July 6, 1979, Health Gourmet, Inc., by its President, Rubin, executed a promissory note and security agreement covering the equipment, fixtures and inventory of the debtor located at 175 Massachusetts Avenue, Boston, Massachusetts. This promissory note was co-signed by Rubin individually. On July 6, 1979, proper financing statements were filed with the City of Boston and Secretary of State's office.

On October 29, 1979, an involuntary petition under Chapter 7 of Title 11 of the United States Code was filed against Health Gourmet. At the time of the filing of the petition, Health Gourmet, Inc. owed Consumers Credit Union $9,762.44.

Pursuant to a Stipulation and Order entered into by the Interim Trustee and those creditors asserting security interests in the assets of the debtor, the debtor's assets were liquidated at public auction on January 29, 1980. The sale brought approximately $13,692.00 in proceeds less appraisal and auctioneers fees of $1,418.63 for a net of $12,273.37, which the trustee holds pending resolution of this dispute.

The trustee does not dispute that the Bank complied with the requirements of Mass.Gen.Laws Chapter 106 Section 9–203 or that the requisite financing statements were recorded. The trustee attacks the debtor's transfer of a security interest in its assets solely on the basis that it was a fraudulent conveyance under both state and bankruptcy law.

In support of its motion for summary judgment the bank contends that the grant of the security interest was not a fraudulent conveyance as a matter of law because the transaction was supported by fair consideration and value. There is no dispute that the security interest was granted within one year prior to the filing of the petition.

For the plaintiff to prevail on its motion for summary judgment and establish its secured position as a matter of law, it must establish beyond any factual controversy that the transaction was not a fraudulent transfer. *Matter of S & W Exporters,* 16 B.R. 941 (Bkrtcy.S.D.N.Y.1982). Summary judgment is inappropriate in the present case because the trustee's defense that the transfer was a fraudulent conveyance may be meritorious, depending upon the circumstances surrounding the transfer.

11 U.S.C. Section 548(a)(1) grants the trustee the power to:

"avoid any transfer of an interest of the debtor in the property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor (1) made such transfer or incurred such obligation with actual intent to hinder, delay or defraud any entity which the debtor was or became on or after the date that such transfer occurred or such obligation was incurred, indebted..."
... or if the debtor...2(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (b)(i) was insolvent on the date that such transfer was made or such obligations was incurred, or became insolvent as a result of such transfer or obligation." 11 U.S.C. Section 548.

Transactions similar to that accomplished in the present case have been invalidated as fraudulent transfers under the former

Bankruptcy Act and the new Code as having been made with actual intent to hinder, delay, and defraud creditors. *See, e.g., Dean v. Davis,* 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917); *In re American Properties, Inc.,* 14 B.R. 637, 8 B.C.D. 776 (Bkrtcy. D.Kan.1981).

■ A debtor's collusion with a third party by which the debtor finances a preference to a creditor evidences wrongful intent within the meaning of Section 548. *W. Norton, 2 Norton Bankruptcy Law & Practice,* Section 34.03, at Part 34, Page 4 (1982). The question whether a debtor intended to hinder, delay, and defraud creditors is a purely factual one. *McWilliams v. Edmonson,* 162 F.2d 454 (5th Cir.1947). *In Dean v. Davis,* 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917) the court found the requisite fraudulent intent where the debtor borrowed $1,600 from his brother-in-law, gave him a mortgage on all property, to pay off notes due a bank which contained forged endorsements. After the debtor declared bankruptcy the brother-in-law claimed a valid security interest, and the trustee sought to avoid the mortgage as a conveyance made with intent to defraud creditors.

The Court upheld the finding that the transaction was a fraudulent conveyance, reasoning:

> "Where the advance is made to enable the debtor to make a preferential payment with bankruptcy in contemplation, the transaction presents an element upon which fraud can be predicated...he intended the necessary consequences of his act; that he willingly sacrificed his property and his other creditors to avert a threatened criminal prosecution; and that Dean, who, knowing the facts, cooperated in the bankrupts fraudulent purpose, lacked the saving good faith." *Id.* at 444–45, 37 S.Ct. at 132.

*In American Properties Inc.,* 14 B.R. 637, 8 B.C.D. 776 (Bkrtcy.D.Kan.1981), a Bankruptcy Court, relying on *Dean v. Davis,* invalidated as a fraudulent transfer under Section 548(a)(1)(A) a transaction where the debtor obtained a loan from a creditor, granted a security interest and used the proceeds of the loan to pay the creditor's unsecured claim. The court found the requisite intent to hinder, delay, and defraud creditors because the lender, in its position, must have known the transaction would have the effect of preventing other creditors from receiving payment on their debts. *Id.* 14 B.R. 637, at 780.

■ The effect of the transaction in this case is similar to the transfers described in these decisions, as the bank became a secured creditor of Health Gourmet as a substitute for the unsecured claim of Rubin, and substituted a secured claim against Health Gourmet for its previous unsecured claim against Rubin. It should be noted that Rubin's payment of corporate expenses out of his checking account only gave him status as an unsecured creditor of Health Gourmet. By obtaining the loan and granting the security interest, Rubin caused the corporation to assume the obligation of Rubin to repay the bank, thus extinguishing the liability of Rubin to the bank. This substitution certainly was harmful to Health Gourmet's unsecured creditors as it deprived the corporation of assets from which creditors' claims could be satisfied. The inference of Rubin's intent to harm creditors is great where he pledged corporate assets to pay off the bank's claim against him individually, where the bank had no right to seek the $9,500 from the corporation. The existence of this intent is a factual question. *See 4 Collier on Bankruptcy,* Section 548.02 at 548.32. In these circumstances entry of summary judgment for the plaintiff is inappropriate.

A further issue of fact raised by the trustee's assertion that the transaction constituted a fraudulent conveyance is whether the bank had knowledge of the debtor's financial difficulties when it took the security interest. The plaintiff contends that the security interest is valid and the trustee's defense under 11 U.S.C. Section 548(a)(2)(A) is unmeritorious because the debtor gave reasonably equivalent value in exchange for the security interest. Section 548(d)(2) defines value for the purposes of the fraudulent conveyance section of the

Code as "property, or satisfaction or securing of a present or antecedent debt of the debtor..." (Emphasis added). Transfers made to benefit third parties are clearly not made for value. L. King, *Collier on Bankruptcy,* Section 548.09 at 548–103 (15th Ed. Supp.1982). In *Bullard v. Aluminum Co. of Amer.,* 468 F.2d 11 (7th Cir.1972), a debtor's transfer of $23,760 to a creditor on account of an antecedent debt in exchange for its releasing the debtor's principal from liability on a state court judgment was determined to be a fraudulent transfer for less than fair consideration. Similarly in the present case, Health Gourmet did not benefit from the transfer. Only Rubin, who was released entirely from the claim of the Bank against him, benefitted from the transfer. Accordingly, I am not convinced as a matter of law that the security interest was given for reasonably equivalent value.

 Even if the court were to find that the debtor received equivalent value for its grant of a security interest, the plaintiff would still not be entitled to judgment as a matter of law because there remains the outstanding factual question whether the bank was a "good faith transferee". Generally, a good faith transferee who gave value is protected from the trustee's avoidance powers pursuant to 11 U.S.C. Section 548(c). The party who seeks to establish that he is a good faith transferee has the burden of demonstrating that he is entitled to this status. L. King, 4 *Collier on Bankruptcy,* Section 548.10 at 548.108 (15th Ed.Supp.1982). However, a transferee who gives value, but who takes security to repay itself an unsecured debt with knowledge of a debtor's insolvency will not be immune from the trustee's avoidance powers because this knowledge is equivalent to lack of good faith. *Dean v. Davis,* 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917). The lender's knowledge of the borrower's insolvency prohibits a finding that he is a good faith transferee. *McWilliams v. Edmonson,* 162 F.2d 484 (5th Cir. 1947). If it is demonstrated that the bank had knowledge that the transaction by which it substituted its secured claim against the corporation for Rubin's unse-

cured claim against the corporation would be detrimental to Health Gourmet's other creditors, then the trustee's claim of a fraudulent conveyance under Section 548(a)(2)(A) will succeed. The existence of this factual issue precludes entry of summary judgment for the Bank.

Accordingly, plaintiff's motion for summary judgment is denied.