In re **FOXMEYER CORPORATION; Foxmeyer Drug Company; Healthcare Transportation System, Inc.; Merchandise Coordinator Services Corporation; Foxmeyer Software, Inc.; and Healthmart, Inc., Debtors.**

**Bart A. Brown, Jr., as Chapter 7 Trustee, Plaintiff,**

**v.**

**General Electric Capital Corporation, the Cit Group/Business Credit, Inc., Bank America Business Credit, Inc., Heller Financial, Inc., La Salle Business Credit, Inc., Sanwa Business Credit Corp., the Bank of New York Commercial Corp., Corestates Bank,**

N.A., FSB Business Finance Corp., First National Bank of Boston, Nationsbank of Texas, N.A., BTM Capital Corp., Gibraltar Corp. of America, and National City Commercial Finance, Inc., Defendants.

No. 96–1329(MBM) to 96–1334(MBM).
Adversary No. A97–34(MBM).

United States Bankruptcy Court,
D. Delaware.

Aug. 4, 2003.

**330**

David M. Friedman, Michael C. Harwood, Howard W. Schub, Kasowitz, Benson, Torres & Friedman, New York City, Stephen W. Spence and Joseph J. Faman, III, Phillips, Goldman & Spence, Wilmington, DE, for the Trustee.

Michael K. Maly, Gail S. Greenwood, Winston & Strawn, Wilmington, DE, Pauline K. Morgan, Young, Conaway, Stargatt & Taylor, Wilmington, DE, for G.E. Capital Corp.

David M. Schiffman, Kenneth E. Wile, Sidley, Austin, Brown & Wood, Chicago, IL, Stephen E. Jenkins, Ashby & Geddes, Wilmington, DE, for the remaining Defendants.

Stanley E. Levine, Erik Sobkiewicz, Campbell & Levine, Pittsburgh, PA, for all of the Defendants.

### MEMORANDUM AND ORDER OF COURT [1]

M. BRUCE MCCULLOUGH, Bankruptcy Judge.

**AND NOW,** this **4th day** of **August, 2003,** upon consideration of the motion by the Defendants for (a) the entry of a judgment in their favor at this time on the Trustee's four remaining counts for fraudulent conveyance (i.e., Counts 1, 2, 5 & 8), which motion is brought pursuant to Fed. R.Civ.P. 52(c) and Fed.R.Bankr.P. 7052 on the ground that the Court's March 7, 2003 decision denying the Trustee's request to combine Fox Drug and Fox Corp. via a piercing of the corporate veil precludes the Trustee, as a matter of law, from prevailing on the aforesaid fraudulent conveyance counts (hereafter "the Rule 52(c) Motion"), and (b) a determination *in limine* that, in the event that the Trustee prevails under any of Counts 1, 2, 5 or 8, the Trustee's potential recovery thereunder shall be limited to the value of the PharMor securities that were dividended by Fox Drug to Avatex (hereafter "the Damages Limitation Motion"); [2] and upon consideration of the

---

1. The Court will utilize herein all of the abbreviations that it utilized in its November 19, 2002 Memorandum Opinion for the instant adversary proceeding, *see In re Foxmeyer Corp.*, 286 B.R. 546 (Bankr.D.Del.2002), without further description or explanation of the same. The Court also draws liberally from its Statement of Facts and findings and conclusions that are set forth in such opinion. Therefore, the reader of the instant Memorandum and Order of Court, for his or her edification, is advised to refer to such earlier opinion of the Court.

2. For shorthand, the Court has referred to the value of the PharMor securities that were dividended by Fox Drug to Avatex as equal to $8 million. *See Foxmeyer Corp.*, 286 B.R. at 553 n. 3.

parties' briefs in support of their respective positions; and in light of the Court's earlier decisions in the instant adversary proceeding, particularly those that are contained in its November 19, 2002 Memorandum Opinion and Order of Court and its March 7, 2003 Memorandum and Order of Court; and given that the parties have waived oral argument with respect to the Defendants' pending motions, thereby making ripe the entry of a decision by the Court at this time with respect to such motions, it is hereby **ORDERED, ADJUDGED, AND DECREED** that:

(a) the Rule 52(c) Motion is **GRANTED** and, thus, judgment is entered in favor of the Defendants, **but only with respect to the Trustee's Count 2,** that is the Trustee's constructive fraudulent conveyance claim under 11 U.S.C. § 548(a)(1)(B), which ruling is dictated by the Trustee's concession that, given the Court's March 7, 2003 decision denying a piercing of the corporate veil, (i) Fox Drug received reasonably equivalent value in return for that which it transferred via the June 19, 1996 Transactions, and (ii) the Trustee's Count 2 consequently is no longer viable (hereafter "the Trustee's Concession"),

(b) the Rule 52(c) Motion is **DENIED WITHOUT PREJUDICE with respect to the Trustee's Counts 1, 5 & 8,** although, as set forth below with detail, the Court substantially narrows the issues that remain for resolution with respect to such counts, and

(c) the Damages Limitation Motion is **DENIED WITH PREJUDICE.**

The rationale for the Court's decision is set forth below save for the Court's ruling with respect to the Trustee's Count 2, for which nothing more need be said given the Trustee's Concession.

## I.

The Defendants maintain now, as they have throughout the course of the instant adversary proceeding, that they are entitled to a judgment in their favor with respect to the Trustee's Counts 1, 5 & 8 because, argue the Defendants, they (a) gave $575 million in value to Fox Drug in good faith as part of the June 19, 1996 Transactions, (b) are thus entitled to a $575 million statutory lien upon that which they received from Fox Drug via the June 19, 1996 Transactions pursuant to 11 U.S.C. § 548(c) and N.Y. Debt. & Cred. Law (N.Y.DCL) § 278(2), and (c) thus possess a statutory lien equal in amount to the maximum amount that the Trustee seeks in the form of a recovery under his Counts 1, 5 & 8 pursuant to 11 U.S.C. § 550(a)(1), thereby precluding any such recovery by the Trustee under such counts. The Court has previously held that the Defendants gave value equal to $575 million as part of the June 19, 1996 Transactions. *See Foxmeyer Corp.*, 286 B.R. at 580. The Court has also previously held that, provided that such $575 million in value was given by the Defendants in good faith, the Defendants possess a $575 million statutory lien pursuant to 11 U.S.C. § 548(c) and NYDCL § 278(2) that would operate to preclude any recovery by the Trustee under 11 U.S.C. § 550(a)(1), thereby negating each of the Trustee's Counts 1, 5 & 8. *See Id.* at 572. The Defendants contend that the Rule 52(c) Motion should now be granted with respect to each of the Trustee's Counts 1, 5 & 8 because, argue the Defendants, the Trustee, after the Court's March 7, 2003 decision denying the Trustee's request for veil piercing, cannot defeat the Defendants' position that they gave said $575 million in good faith.

With respect to the Trustee's Counts 1 and 5 in particular, that is the Trustee's actual fraudulent conveyance claims under, respectively, 11 U.S.C. § 548(a)(1)(A) and NYDCL § 276, the Defendants make numerous arguments in support of their position that the Trustee can no longer controvert their good faith, the highlights of which essentially are that (a) the gravamen of the Trustee's actual fraudulent conveyance actions is that Fox Drug and Fox Corp., on a combined basis, sought to hinder, delay, and/or defraud their creditors by conveying away $198 million in assets via the integrated June 19, 1996 Transactions, a part of which transactions included the $190 million dividend by Fox Corp. and the $8 million dividend by Fox Drug, (b) the Trustee, as a result of the Court's decision to disallow veil piercing, can no longer succeed in predicating his actual fraudulent conveyance claims upon (i) the fact that Fox Corp. intended to and did dividend away $190 million of its assets by virtue of the June 19, 1996 Transactions, or (ii) an allegation that Fox Drug, by intending to assist Fox Corp. in Fox Corp.'s effectuation of such $190 million dividend, thereby intended to hinder, delay, and/or defraud its unsecured creditors, (c) the Trustee thus also can no longer successfully oppose the Defendants' affirmative defense of (value given in) good faith by pointing to any knowledge by the Defendants regarding either (i) Fox Corp.'s dividend of $190 million of its assets, (ii) Fox Corp.'s intent in effecting such dividend, (iii) Fox Drug's assistance to Fox Corp. in effecting such dividend, and/or (iv) Fox Drug's intent in providing such assistance, (d) the Trustee can no longer succeed in predicating his actual fraudulent conveyance claims upon the fact that Fox Drug intended to and did dividend away $8 million of its assets via the June 19, 1996 Transactions since, by virtue of the Court's decision to disallow veil piercing as well as the Trustee's Concession, Fox Drug did not intend thereby to hinder, delay, or defraud its own creditors, and (e) the Trustee thus also can no longer successfully oppose the Defendants' affirmative defense of (value given in) good faith by pointing to any knowledge by the Defendants regarding either Fox Drug's dividend of $8 million of its assets or Fox Drug's intent in effecting such dividend.

As for the Trustee's Count 8, that is the Trustee's constructive fraudulent conveyance claim under NYDCL §§ 273–275, the Defendants, in reliance upon the decision in *In re Sharp International Corp. v. State Street Bank and Trust Co.*, 281 B.R. 506 (Bankr.E.D.N.Y.2002), argue that the Trustee can no longer controvert their good faith because (a) the *Sharp International* court, argue the Defendants, held that the statutory requirement of good faith is satisfied unless the transferee whose transfer is sought to be avoided possessed actual or constructive knowledge of a fraudulent scheme that has the effect of depriving the debtor of the benefit of the consideration given in exchange for the transfer that is sought to be avoided, and (b) the Court has already held, as set forth above, that the Defendants gave value, that is Fox Drug was not deprived of the benefit of the consideration given by the Defendants, equal to $575 million as part of the June 19, 1996 Transactions.

Finally, the Defendants maintain that the application in the instant matter of caselaw including, in particular, the decision in *HBE Leasing Corp. v. Frank*, 48 F.3d 623 (2nd Cir.1995), compels this Court to grant the Damages Limitation Motion and thereby rule that, in the event that the Trustee prevails under any of Counts 1, 5 or 8, the Trustee's potential recovery thereunder shall be limited to the $8 million value of the PharMor securities that were dividended by Fox Drug to Ava-

tex. The Defendants contend as much because they argue that (a) such caselaw holds that only net amounts diverted from—i.e., damages consequently suffered by the creditor body of—a debtor may be recovered via a fraudulent conveyance action, and (b) the only amount diverted from Fox Drug in any event was the $8 million worth of PharMor securities.

The Trustee opposes the Rule 52(c) Motion as it pertains to the actual fraudulent conveyance claims presented in his Counts 1 and 5, and argues in support of such opposition that (a) the gravamen of the Trustee's actual fraudulent conveyance actions is not merely an intent by Fox Drug and Fox Corp. to divert $198 million of their assets via the aforesaid dividends but also an intent by Fox Drug, as a result of the June 19, 1996 Transactions, to (i) encumber $575 million of its previously unencumbered assets, thereby evidencing an intent to also hinder if not defraud Fox Drug's unsecured creditor body that remained after Fox Drug utilized the Loan Proceeds of $575 million solely to effect the payoff of unsecured debt to, that is to essentially prefer, the Citicorp Lenders and the Noteholders, and (ii) essentially sacrifice, that is destroy, itself so as to aid Avatex in the satisfaction of Avatex's indebtedness to others, thereby evidencing an intent to also hinder if not defraud Fox Drug's remaining unsecured creditor body, and (b) the Defendants possessed knowledge of each of the intentions of Fox Drug as just described, thereby dictating a finding that the Defendants acted in bad faith instead of good faith. The Trustee also opposes the Rule 52(c) Motion as it pertains to the New York law constructive fraudulent conveyance claim in his Count 8, and argues in support of such opposition that, *inter alia,* the Defendants misinterpret the decision in *Sharp International.* Finally, the Trustee disputes the procedural propriety of the Rule 52(c) Motion. As for the Damages Limitation Motion, the Trustee argues that the same should be denied because Fox Drug suffered damages other than the loss of the $8 million in PharMor securities, namely the encumbrance of previously unencumbered assets not to mention the total destruction of itself.

## II.

The Court shall first address the Trustee's position that the Rule 52(c) Motion is procedurally improper. The Trustee contends, as an initial matter, that Fed. R.Civ.P. 52(c), under which rule the Rule 52(c) Motion is brought, only authorizes a judgment thereunder after both a trial has commenced and a party has been fully heard on an issue that may be dispositive of a claim. The Court fully agrees with the Trustee on the latter point since the plain language of such rule provides, in pertinent part, that:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim, that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed.R.Civ.P. 52(c), 28 U.S.C.A. (West 2003) (made applicable to adversary proceedings pursuant to Fed.R.Bankr.P. 7052). The Trustee contends that the Rule 52(c) Motion is procedurally inappropriate because a trial, argues the Trustee, has not yet even commenced with respect to, let alone has the Trustee had the opportunity to be fully heard on, the issues upon which the Defendants wish the Court to now rule via the Rule 52(c) Motion, namely the alleged fraudulent intent of Fox Drug and the Defendants' good faith. The Trustee supports the preceding posi-

tion by arguing, in turn, that (a) the only trial that has thus far been conducted in the instant adversary proceeding was held on February 5, 2003, which trial dealt with the issue of the combination of Fox Drug and Fox Corp. via a piercing of the corporate veil, and (b) the issue of veil piercing is totally unrelated to the issues of the alleged fraudulent intent of Fox Drug and the Defendants' good faith. Moreover, argues the Trustee, the previous trial regarding the aforesaid issue of veil piercing cannot serve as the requisite trial called for under Fed.R.Civ.P. 52(c) so as to make possible the granting of the Rule 52(c) Motion because, according to the Trustee, a judgment under Fed.R.Civ.P. 52(c), as a matter of law, cannot be rendered with respect to issues that were not the subject of the only trial that has thus far been conducted. As support for the latter point, the Trustee cites to the decision in *Antipas v. 2102, Inc.*, 2001 U.S. Dist. Lexis 15878 (E.D.Pa.2001).

For several reasons, the Court disagrees with much of the Trustee's foregoing procedural analysis. First, the *Antipas* court only held that Fed.R.Civ.P. 52(c) does not authorize the entry of a judgment with respect to a claim that is not or was not before a court during—i.e., is not or was not the subject of—the trial in question. *See Id.* at n. 3. The *Antipas* court did not hold, as the Trustee contends, that a judgment under Fed.R.Civ.P. 52(c) is always unauthorized with respect to unheard issues that arise within the prosecution of a claim that is or was the subject of the trial in question. In fact, the Court holds, as a matter of law, that if a party is fully heard on a particular issue that arises within the prosecution of a claim and a court finds against such party on such issue, then such court is free to grant judgment under Fed.R.Civ.P. 52(c) against such party on other issues for which such party has not yet been heard but that will arise within the remaining prosecution of such claim provided that, absent a favorable finding by such court on the issue that has been heard, such party, as a matter of law, cannot prevail on such other issues. Second, applying the foregoing statement of the law regarding Fed. R.Civ.P. 52(c), the Court may, simply on the basis of its ruling that denies the Trustee's request for veil piercing, enter judgment pursuant to Fed.R.Civ.P. 52(c) against the Trustee regarding the issues of the alleged fraudulent intent of Fox Drug and the Defendants' good faith, provided that (a) the Court also concludes, as a matter of law, that the Trustee cannot prevail on such issues absent a favorable ruling on the veil piercing issue, and (b) the issues of veil piercing, the alleged fraudulent intent of Fox Drug, and the Defendants' contention that they acted in good faith, each arise within the prosecution of claims that were the subject of the trial that was conducted on February 5, 2003. Third, the Court is uncertain whether, but suspects that perhaps, the Trustee takes the position that the prosecution of the veil piercing issue was somehow divorced from the prosecution of the Trustee's claims within which such issue arose, namely those claims that comprise the Trustee's Counts 1, 5 & 8, such that the Trustee can now successfully argue that Counts 1, 5 & 8 were not a subject of the trial that was conducted on February 5, 2003. However, to the extent that the Trustee takes such position, the same is rejected outright—indeed, in contrast to *Antipas*, where certain claims were not the subject of the trial in question therein, thereby precluding entry of a judgment via Fed.R.Civ.P. 52(c) with respect to such claims, the Trustee's Counts 1, 5 & 8 were a subject of the February 5, 2003 trial notwithstanding that the only issue that was then prosecuted was that regarding

veil piercing. Therefore, the Rule 52(c) Motion is procedurally appropriate, and the same shall be granted with respect to (a) Counts 1 and 5 if the Court determines, as a matter of law, that the Trustee cannot prevail on the issue of the alleged fraudulent intent of Fox Drug absent a favorable ruling on the veil piercing issue, or (b) Counts 1, 5 & 8 if the Court determines, as a matter of law, that the Trustee cannot prevail on the issue of the Defendants' good faith absent a favorable ruling on the veil piercing issue.

### III.

■ Addressing next the merits of the Rule 52(c) Motion as the same pertains to the Trustee's actual fraudulent conveyance claims set forth in his Counts 1 and 5, the Court holds first that, given the Court's March 7, 2003 decision denying veil piercing, the Trustee can no longer prevail on either such count—that is, the Trustee can no longer prevail on the issue of Fox Drug's alleged fraudulent intent, thereby precluding recovery under either such count—to the extent that he predicates the same upon (a) the fact that Fox Corp. intended to and did dividend away $190 million of its assets by virtue of the June 19, 1996 Transactions, (b) an allegation that Fox Drug, by intending to assist Fox Corp. in Fox Corp.'s effectuation of such $190 million dividend, thereby intended to hinder, delay, and/or defraud its unsecured creditors, or (c) any sort of allegation similar in nature to that just recounted in subpart (b), such as, for instance, an allegation that Fox Drug intended to hinder, delay, and/or defraud its unsecured creditors because it allegedly aided Fox Corp. in Fox Corp.'s alleged destruction of Fox Corp., which destruction allegedly occurred by virtue of Fox Corp.'s $190 million dividend. The preceding conclusion is dictated because, absent a combination of Fox Drug and Fox Corp. via veil piercing,

Fox Drug's creditor body had no claim to the assets of Fox Corp. As a consequence of the immediately preceding point, Fox Drug's unsecured creditor body neither was nor could have been harmed (a) by Fox Corp.'s transfer of its assets for no return value, (b) by Fox Corp.'s alleged destruction of itself, and/or (c) consequently by Fox Drug's alleged assistance to Fox Corp. in accomplishing such acts. Of course, if such creditor body was not harmed by such acts, then one necessarily could not intend to hinder, delay, or defraud such creditor body simply by intending to engage in such acts.

■ Second, the Court holds that, given the Court's March 7, 2003 decision denying veil piercing as well as the Trustee's Concession, the Trustee can no longer prevail on either of his Counts 1 and 5 simply by pointing, in support of such counts and as a basis for finding that Fox Drug possessed an intent to hinder, delay, and/or defraud its unsecured creditors when it entered into the June 19, 1996 Transactions, to the fact that Fox Drug intended to and did thereby transfer away $8 million of its assets. The Court holds as it does because the Court holds, in turn, that, if, as the Trustee now concedes, Fox Drug received reasonably equivalent value when it engaged in the June 19, 1996 Transactions, a part of which transactions included Fox Drug's $8 million dividend, then Fox Drug necessarily could not, solely by virtue of intending to effect that discrete part of the June 19, 1996 Transactions that resulted in a transfer of such $8 million in assets, have thereby intended to hinder, delay, or defraud its unsecured creditor body. The preceding conclusion is dictated because (a) the Trustee, solely with respect to such $8 million asset transfer, argues nothing more than that Fox Drug's net assets shrunk by $8 million, which shrinkage, given a concession that Fox

Drug nevertheless received reasonably equivalent value, necessarily cannot have been harmful to Fox Drug's unsecured creditor body, and (b) if such creditor body was not harmed by such $8 million transfer, then Fox Drug necessarily could not have intended to hinder, delay, or defraud such creditor body simply by intending to effect such $8 million transfer.

Third, the Court holds that, because, as just explained, Fox Drug can now no longer be found to have possessed an intent to hinder, delay, or defraud its unsecured creditor body simply due to (a) Fox Corp.'s dividend of Fox Corp.'s assets, or (b) Fox Drug's intent to effect its own $8 million dividend or to aid Fox Corp. in Fox Corp.'s effectuation of Fox Corp.'s dividend, the Defendants, simply by possessing knowledge that Fox Corp. and/or Fox Drug intended to and did take such actions (hereafter "Knowledge of the Dividends"), can now no longer be found to have thereby possessed knowledge of a bad intent by Fox Drug. As a consequence of the preceding, and because the Defendants, as a matter of law, acted in good faith provided that they were "free from either fraudulent intent ... [themselves] or knowledge as to the fraudulent intent of ... [Fox Drug—i.e., their] transferor," *see Foxmeyer Corp.*, 286 B.R. at 581 (also holding that "good faith" under 11 U.S.C. § 548(c) means the same thing as "without actual fraudulent intent" under NYDCL § 278(2) and referring henceforth to both showings as one of "good faith," which shorthand the Court utilizes as well herein), and since the Trustee has never even alleged that the Defendants acted with a fraudulent intent themselves regarding the June 19, 1996 Transactions, the Court holds as well that the Trustee can now no longer prevail on the issue of the Defendants' good faith or, thus, the Trustee's Counts 1 and 5 to the extent that he argues that the Defendants

acted in bad faith simply by virtue of their Knowledge of the Dividends.

In light of the foregoing analysis, the Court concludes that the Defendants would be entitled to a present grant of the Rule 52(c) Motion as the same pertains to the Trustee's Counts 1 and 5 were it the case that the Trustee argues nothing with respect to such counts other than that Fox Drug and Fox Corp. intended to (a) divert $198 million of their assets via dividends, and (b) thereby hinder, delay, and/or defraud Fox Drug's unsecured creditors. However, and notwithstanding the Court's agreement with the Defendants that such $198 million diversion via dividends constitutes the centerpiece of the Trustee's Counts 1 and 5, the Court cannot find that the Trustee, within such counts, confines his allegation of bad intent on the part of Fox Drug to the aforesaid $198 million diversion. Instead, the Court finds, as the Trustee now argues, that he has advanced, if not precisely pled, two other discrete theories upon which he predicates his allegation of bad intent on the part of Fox Drug, namely that Fox Drug intended, as a result of the June 19, 1996 Transactions, to (a) encumber $575 million of its previously unencumbered assets, thereby evidencing, alleges the Trustee, an intent to also hinder if not defraud Fox Drug's unsecured creditor body that remained after Fox Drug utilized the Loan Proceeds of $575 million to effect the payoff of unsecured debt to, that is to essentially prefer, the Citicorp Lenders and the Noteholders, *see* 1st Am. Compl., ¶¶ 1, 45, 53 & 58; *see also* Trustee's Brief dat. May 23, 2003, pg. 4, and (b) essentially sacrifice, that is destroy, itself so as to aid Avatex in the satisfaction of Avatex's indebtedness to others, thereby evidencing, alleges the Trustee, an intent to also hinder if not defraud Fox Drug's remaining unsecured creditor body, *see* 1st Am. Compl., ¶¶ 1, 22, 45–47, 49 & 61; *see also* Trustee's Brief

dat. May 23, 2003, pp. 4, 8 & 11. The Court must deny the Rule 52(c) Motion as the same pertains to the Trustee's Counts 1 and 5(a) if, as a matter of law, the Trustee can possibly prevail on either of the aforesaid two discrete theories, and (b) provided that neither such discrete theories by the Trustee nor the Trustee's opposition to the Defendants' "good faith" defense waged in response thereto depend for success upon a favorable ruling on the veil piercing issue.

■ The Court concludes that the Trustee, as a matter of law, cannot succeed in arguing that Fox Drug, simply because it intended to encumber $575 million of its previously unencumbered assets by virtue of the June 19, 1996 Transactions, thus also intended to hinder, delay, or defraud its unsecured creditor body within the meaning of 11 U.S.C. § 548(a)(1)(A) and NYDCL § 276. The Court rules as it does because (a) Fox Drug, in return for such encumbrance, received the Loan Proceeds of $575 million, which loan proceeds Fox Drug, in turn, utilized to effect the payoff of then-existing legitimate unsecured debt to the Citicorp Lenders and the Noteholders, and (b) Fox Drug, by intending to utilize the encumbrance of $575 million of its previously unencumbered assets to satisfy then-existing legitimate unsecured debt, did not, without more, thereby also intend to hinder, delay, or defraud its unsecured creditor body within the meaning of 11 U.S.C. § 548(a)(1)(A) and NYDCL § 276. The Court understands the Trustee to argue additionally, in support of his position, that (a) Fox Drug intended to utilize the encumbrance of $575 million of its previously unencumbered assets to ultimately prefer the Citicorp Lenders and the Noteholders to the detriment of Fox Drug's remaining unsecured creditor body, and (b) Fox Drug, because it intended to effect such

preference, thus possessed the requisite bad intent to hinder if not defraud such remaining unsecured creditor body. Unfortunately for the Trustee, however, such additional argument, without more, is insufficient to state a viable claim under 11 U.S.C. § 548(a)(1)(A) and NYDCL § 276 because, and as abundant caselaw makes clear, a debtor can favor, indeed prefer, any one or several of its unsecured creditors with a transfer of assets to the detriment of such debtor's remaining unsecured creditor body, even in the face of such debtor's insolvency, and such transfer, as a matter of law, cannot, without more, then be avoided as a fraudulent conveyance on the ground that such debtor possessed actual intent to hinder, delay, or defraud its creditors. *See In re Hartley,* 52 B.R. 679, 690–691 (Bankr.N.D.Ohio 1985); *In re Rubin Bros. Footwear, Inc.,* 119 B.R. 416, 423 (S.D.N.Y.1990); *In re Crater,* 286 B.R. 756, 761–762 (Bankr. D.Ariz.2002); *In re Missionary Baptist Foundation of America, Inc.,* 24 B.R. 973, 977–978 (Bankr.N.D.Tex.1982); *In re Lucar Enterprises, Inc.,* 49 B.R. 717, 718–719 (Bankr.S.D.Fla.1985); *In re Klein,* 1991 WL 242169 at *8 (Bankr.N.D.Ill.1991); *Irving Trust Co. v. Chase National Bank,* 65 F.2d 409, 410 (2nd Cir.1933). Indeed, the only way, as a matter of law, to arguably make viable under 11 U.S.C. § 548(a)(1)(A) and NYDCL § 276 a claim that a debtor intended to make a transfer that, in turn, enabled such debtor to effect a preference is if, in conjunction with such claim, it can also be shown that, at the time of the preference-enabling transfer, such debtor possessed the intent to (a) utilize the consideration obtained in return for such transfer to pay one or several, but not all, of its antecedent unsecured creditors, and (b) file for bankruptcy shortly subsequent to, that is generally within 90 days of, the transfer of such consideration to such antecedent creditors, thereby ef-

fecting a preference within the meaning of 11 U.S.C. § 547. *See Dean v. Davis,* 242 U.S. 438, 444, 37 S.Ct. 130, 61 L.Ed. 419 (1917); *Irving Trust,* 65 F.2d at 411 (citing *Dean v. Davis*). The Court is not entirely certain whether the Trustee takes the position that Fox Drug, when it entered into the June 19, 1996 Transactions, then had the intent to throw itself into bankruptcy within the ensuing 90 days. Furthermore, doubt exists as to whether the aforementioned edict laid down in *Dean v. Davis* remains in force at the present time, *see, e.g.,* Alan N. Resnick, *Bankruptcy Law Manual* § 8:32 (5th ed.2003) (noting that provision in Bankruptcy Act that served to codify the *Dean v. Davis* rule is absent from the Bankruptcy Code but that several cases nevertheless hold that such rule survives to the present day—therefore, *"Dean v. Davis may* still be with us"), and, if so, whether the same is, or should be, limited to certain circumstances that clearly do not exist in the instant matter, namely the circumstance where the recipient of the preference-enabling transfer is essentially also the recipient of the preferential transfer, *see In re Craig,* 92 B.R. 394, 400–401 (Bankr.D.Neb.1988) (pronouncing that *Dean v. Davis* rule only applies if the recipient of the preference-enabling transfer is also the recipient of the preferential transfer); *In re American Properties, Inc.,* 14 B.R. 637, 642 (Bankr.D.Kan.1981) (different fact pattern than in *Craig* but essentially the same result as in *Craig* ); *In re Health Gourmet, Inc.,* 29 B.R. 673, 675–677 (Bankr.D.Mass.1983) (recipient of the preference-enabling transfer was also

the recipient of an immediate transfer from the recipient of the preferential transfer—put differently, recipient of preference-enabling transfer ultimately received the funds that constituted the preferential transfer). However, given that the Court has reason to suspect, its uncertainty notwithstanding, that the Trustee takes the position that Fox Drug, on June 19, 1996, then intended to throw itself into bankruptcy within the ensuing 90 days, *see* 1st Am. Compl., ¶ 71; *see also* Trustee's Brief dat. May 23, 2003, pg. 10, and because neither a claim of the Trustee predicated upon such position nor opposition by the Trustee to a "good faith" defense waged by the Defendants in response thereto [3] depend in any way for success upon a favorable ruling on the veil piercing issue, and since the Court declines to presently rule whether the *Dean v. Davis* edict remains good law or is limited to the circumstance described above, the Court shall rule that the Trustee survives the Rule 52(c) Motion as the same pertains to the Trustee's Counts 1 and 5.

■ That the Trustee shall survive the Rule 52(c) Motion as the same pertains to the Trustee's Counts 1 and 5 is also dictated because the Court concludes, in turn, that (a) sufficient proof by the Trustee that Fox Drug intended, as a result of the June 19, 1996 Transactions, to essentially sacrifice, that is destroy, itself will suffice to evidence the requisite bad intent by Fox Drug such that the Trustee could thereby make out his prima facie case under 11 U.S.C. § 548(a)(1)(A) and NYDCL § 276,

---

3. The recipient of a preference-enabling transfer can successfully defend against a fraudulent conveyance claim that is lodged against itself, which claim is predicated upon a debtor's intent to file for bankruptcy and thereby make preferential such debtor's subsequent transfer of the consideration received from such recipient, by establishing that, as of the date of such preference-enabling transfer, it was unaware of such intent on such debtor's part as just described. *See Dean v. Davis,* 242 U.S. at 444–445, 37 S.Ct. 130; *Irving Trust,* 65 F.2d at 411. The Defendants, in fact, assert such a defense in response to such a claim by the Trustee. *See* Opening Br. Supp. GECC Rule 12(b)(6) & 56 Motions, dat. 7/31/97, pg. 30.

(b) the position by the Trustee that Fox Drug intended to destroy itself does not depend for success upon a favorable ruling on the veil piercing issue, and (c) the Trustee's opposition to the Defendants' "good faith" defense that they lacked knowledge of Fox Drug's intent to destroy itself does not depend for success upon a favorable ruling on the veil piercing issue.

Having ruled that the Rule 52(c) Motion as the same pertains to the Trustee's Counts 1 and 5 must be, and thus is, denied, the Court nevertheless feels obliged to note as well that:

 (a) the Trustee predicates his theory that Fox Drug intended to destroy itself upon an allegation, in turn, that Fox Drug (i) knew, either actually or constructively, that it could not survive without short term trade credit, *see* 1st Am. Compl., ¶ 46; *see also* Trustee's Brief dat. May 23, 2003, pg. 9, and (ii) intended to destroy its ability, going forward from June 19, 1996, to obtain sufficient short term credit from its trade creditors, *see* 1st Am. Compl., ¶¶ 49 & 61;

(b) the Trustee predicates his theory that Fox Drug intended to destroy its ability to obtain sufficient short term trade credit upon an allegation, in turn, that Fox Drug knew, either actually or constructively, that, by engaging in the June 19, 1996 Transactions, it would thereby compel its trade creditors to fatally reduce or discontinue their extension of such short term credit, *see* 1st Am. Compl., ¶¶ 45–47; *see also* Trustee's Brief dat. May 23, 2003, pg. 9;

(c) the Trustee, if he cannot succeed in proving that Fox Drug knew, either actually or constructively, that it would necessarily dry up its short term trade credit sources by entering into the June 19, 1996 Transactions, will then be unable either to succeed in proving his theory that Fox Drug intended to destroy itself or, consequently, to thereby prevail on his Counts 1 and 5,[4]

(d) the Trustee cannot succeed in proving that Fox Drug knew, either actually or constructively, that it would

---

**4.** The Court notes that the Trustee alleges that Fox Drug knew before the June 19, 1996 Transactions, either actually or constructively, that (a) it then "needed to borrow to cover capital expenditures and interest payments," and (b) after the June 19, 1996 Transactions, Fox Drug would be unable to borrow because such transactions would leave it with virtually no unencumbered assets. *See* 1st Am. Compl., ¶ 71d. However, the Court does not understand the Trustee, by making the preceding allegation, to argue, at least seriously, as a basis for his theory that Fox Drug intended to destroy itself, that Fox Drug intended to destroy its ability to borrow by entering into the June 19, 1996 Transactions. The Court draws the preceding conclusion because Fox Drug knew, prior to entering into the June 19, 1996 Transactions, that (a) unless it effected such transactions and thereby paid off the Citicorp Lenders and the Noteholders, it would not be able to borrow in any event or

for any reason, *Foxmeyer Corp.*, 286 B.R. at 554–555 & 566 (noting that the agreements for the debt to the Citicorp Lenders and the Noteholders contained restrictive covenants that precluded Fox Drug from borrowing or encumbering its assets), (b) given its woeful financial condition as of June 19, 1996, it could not possibly have obtained unsecured financing sufficient to satisfy its debt to the Citicorp Lenders and the Noteholders, (c) the June 19, 1996 Transactions, far from destroying its ability to borrow, thus instead afforded it an avenue by which it could borrow to cover capital expenditures and interest payments, and (d) by virtue of the Credit Agreement with the Defendants that was to be executed as part of the June 19, 1996 Transactions, it would possess the right subsequent to June 19, 1996, to borrow from the Defendants an additional amount of approximately $175 million.

necessarily dry up its short term trade credit sources by entering into the June 19, 1996 Transactions if, in fact, such short term trade credit was not substantially reduced as a result of the June 19, 1996 Transactions;

(e) some evidence was introduced at the February 5, 2003 trial regarding veil piercing that arguably tends to disprove the Trustee's allegation that Fox Drug's trade creditors fatally discontinued their extension of short term credit to Fox Drug as a result of the June 19, 1996 Transactions, *see In re Foxmeyer Corp.*, 290 B.R. 229, 239–240 (Bankr.D.Del.2003) (discussion regarding evidence that trade credit continued to be extended to Fox Drug after the effectuation of the dividend by Fox Corp., which dividend was effected on, and as part of the transactions that occurred on, June 19, 1996); and

(f) if such evidence cannot be refuted by the Trustee, then the Trustee will succeed neither in proving that Fox Drug's short term trade credit sources dried up as a result of the June 19, 1996 Transactions, nor, consequently, that Fox Drug knew, either actually or constructively, that it would necessarily dry up its short term trade credit sources by entering into the June 19, 1996 Transactions.

Because the Court cannot presently say with certainty that the Trustee has been fully heard on the issue of whether Fox Drug's short term trade credit sources dried up as a result of the June 19, 1996 Transactions, the Court shall not presently rule, via the Rule 52(c) Motion, that (a) Fox Drug's short term trade credit sources did not, in fact, dry up as a result of the June 19, 1996 Transactions, (b) Fox

Drug thus lacked knowledge, either actual or constructive, that it would necessarily dry up its short term trade credit sources by entering into the June 19, 1996 Transactions, (c) the Trustee cannot prove that Fox Drug intended to destroy itself, and (d) the Trustee, consequently, cannot thereby prevail on his Counts 1 and 5. However, the bringing of another Rule 52(c) motion by the Defendants would be proper in the event that, after such opportunity to be heard, the Trustee cannot sufficiently prove that Fox Drug's short term trade credit sources dried up as a result of the June 19, 1996 Transactions.

**IV.**

 As for the merits of the Rule 52(c) Motion as the same pertains to the Trustee's Count 8, that is the Trustee's constructive fraudulent conveyance claim under NYDCL §§ 273–275, the Court rejects the Defendants' interpretation of the *Sharp International* decision to the effect that the statutory requirement of good faith under NYDCL § 272 is necessarily satisfied if a transferee whose transfer is sought to be avoided (hereafter "Transferee") did not possess actual or constructive knowledge of a fraudulent scheme that had the effect of depriving a debtor of the benefit of the consideration given in exchange for a transfer that is sought to be avoided (hereafter "Transfer"). The Court instead understands the *Sharp International* court to have held, solely within the context of construing the decision in *HBE Leasing*, that the *HBE Leasing* court, in turn, held that lack of good faith within the meaning of NYDCL § 272 could only be demonstrated *therein* if the Transferee *therein* possessed actual or constructive knowledge of a fraudulent scheme that had the effect of depriving the debtor *therein* of the benefit of the consideration given by such Transferee in exchange for the Transfer *therein, see*

*Sharp International,* 281 B.R. at 520 ("In the context of that case, therefore, the underlined language must be understood to refer to . . . .")—put differently, the Court understands the *Sharp International* court, at least to a large extent, to have confined the *HBE Leasing* analysis to the facts presented in *HBE Leasing.* In fact, and with due respect for the *Sharp International* court, the *HBE Leasing* court actually held as well that lack of good faith within the meaning of NYDCL § 272 could also be demonstrated therein if the Transferee therein possessed actual or constructive knowledge that the debtor therein actually intended to subsequently transfer the consideration given by such Transferee in exchange for the Transfer therein so as to defraud such debtor's unsecured creditor body. *See HBE Leasing,* 48 F.3d at 635. Moreover, the Court notes that the *Sharp International* court, after construing the *HBE Leasing* decision in the fashion that it did, proceeded to then determine in its case, so as to ascertain the presence or lack of relevant good faith therein on the part of its Transferee, whether its debtor generally "misused" or "used for an improper purpose" the consideration that such debtor received in exchange for the Transfer therein. *See Sharp International,* 281 B.R. at 520. Such determination by the *Sharp International* court is consistent with, indeed is precisely that which is called for by, the latter holding in *HBE Leasing* to the effect that the presence or lack of relevant good faith depends as well upon whether a Transferee possessed actual or constructive knowledge that a debtor actually intended to subsequently transfer the consideration given by such Transferee in exchange for a Transfer so as to defraud such debtor's unsecured creditor body. Because, in light of the foregoing, good faith under NYDCL § 272 will be found to be lacking if a Transferee possessed actual or constructive knowledge that a debtor actually intended to subsequently transfer the consideration given by such Transferee in exchange for a Transfer so as to defraud such debtor's unsecured creditor body, such good faith may potentially be found to be lacking as well in the instant matter (a) provided that the Court ultimately concludes that the *Dean v. Davis* edict retains continuing vitality, (b) if it can be shown that Fox Drug, on June 19, 1996, then intended to file for bankruptcy within the ensuing 90 days, (c) if it can be shown that Fox Drug, on June 19, 1996, consequently then also intended to prefer the Citicorp Lenders and the Noteholders when it paid them off with the Loan Proceeds, and (d) if it can be shown that the Defendants, on June 19, 1996, then possessed actual or constructive knowledge of such intent on the part of Fox Drug as just described. Consequently, the Court is constrained to rule that the Trustee survives the Rule 52(c) Motion as the same pertains to the Trustee's Count 8.

■ The Court also notes that neither the decision in *Sharp International* nor that in *HBE Leasing* dealt with an allegation that a debtor intended to hinder, delay, or defraud its unsecured creditors, not by virtue of its failure to receive back any or at least reasonably equivalent consideration or by virtue of its alleged intent to improperly utilize any such consideration that might have been received, but rather by virtue of its alleged intent to cause the destruction to itself that is alleged to have been ultimately wreaked by the transfer that is sought to be avoided. Such a claim, as set forth above, is not only levied by the Trustee but is also one that survives the Rule 52(c) Motion as the same pertains to the Trustee's Counts 1 and 5. *See supra* pp. 336 & 338–39. As well, the Trustee's opposition to the Defendants' "good faith" defense that they lacked knowledge of Fox

Drug's intent to destroy itself also survives the Rule 52(c) Motion as the same pertains to the Trustee's Counts 1 and 5. *See supra* p. 339. Because such opposition by the Trustee survives the Rule 52(c) Motion as the same pertains to the Trustee's Counts 1 and 5, and since "'good faith' under NYDCL § 272 is identical to 'good faith' under 11 U.S.C. § 548(c) and 'without actual fraudulent intent' under NYDCL § 278(2)," *Foxmeyer Corp.*, 286 B.R. at 582, the Court holds that the issue of the Defendants' good faith within the meaning of NYDCL § 272 cannot be resolved via the Rule 52(c) Motion. That the issue of the Defendants' good faith under NYDCL § 272 cannot be resolved via the Rule 52(c) Motion furnishes the Court with an additional ground upon which to deny such motion as the same pertains to the Trustee's Count 8.

### V.

With respect to the Damages Limitation Motion, the Court agrees summarily with the Defendants that case authority—including, in particular, the decision in *HBE Leasing Corp. v. Frank*, 48 F.3d 623 (2nd Cir.1995)—exists for the proposition that, the language of 11 U.S.C. §§ 548 & 550 and the relevant provisions of NYDCL notwithstanding, only net amounts diverted from, that is damages consequently suffered by the creditor body of, a debtor may be recovered via a fraudulent conveyance action. Moreover, the Court is sufficiently persuaded by such case authority such that, on the strength of the same, the Court would grant the Damages Limitation Motion and thereby restrict any potential recovery by the Trustee to the $8 million value of the PharMor securities that were dividended by Fox Drug were it the case—and if the Court were not also inclined to grant the Rule 52(c) Motion to the extent—that the Trustee predicates his Counts 1, 5, and 8 on nothing other than that Fox Drug and Fox Corp. intended to divert $198 million of their assets via dividends. The Court so rules because, as set forth earlier herein, Fox Drug's unsecured creditor body neither was nor could have been harmed, either directly or indirectly, by Fox Corp.'s diversion of $190 million of its assets via a dividend to Avatex. *See supra* pp. 335–36. The preceding notwithstanding, however, the Court cannot grant the Damages Limitation Motion given that (a) such motion depends for its success upon a finding that the Trustee predicates his Counts 1, 5, and 8 on nothing other than the aforesaid diversion of $198 million via dividends, (b) the Trustee, as also explained earlier herein, has pled two other discrete theories upon which he predicates such counts, which theories do not revolve around such diversion of funds, *see supra* p. 336, and (c) the Trustee, were he to succeed in proving all facets of either such theory, would not be limited to a recovery of merely the $8 million value of the PharMor securities. Therefore, the Court shall deny the Damages Limitation Motion with prejudice.

### VI.

**IN SUMMARY,** (a) the Rule 52(c) Motion is **GRANTED** and, thus, judgment is entered in favor of the Defendants, **but only with respect to the Trustee's Count 2,** (b) the Rule 52(c) Motion is **DENIED WITHOUT PREJUDICE with respect to the Trustee's Counts 1, 5 & 8,** and (c) the Damages Limitation Motion is **DENIED WITH PREJUDICE.**